UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>THOMAS CONNERTON | No. 3:17-cr-47 (SRU) |

**ORDER**

Defendant Thomas Connerton ("Connerton") has filed two motions for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). *See* First Mot., Doc. No. 304; Second Mot., Doc. No. 311.

The first motion, filed through counsel, seeks release on the grounds that (a) the rapidly spreading coronavirus ("COVID-19") has made Connerton's sentence much more punitive than intended; and (b) his myriad medical conditions make him susceptible to complications from COVID-19. First Mot., Doc. No. 304. Elaborating on those medical conditions, Connerton's second motion, filed *pro se*, posits that release is warranted based on his need to obtain a necessary surgery. Second Mot., Doc. No. 311.

The government filed an objection to Connerton's first motion, doc. no. 308 ("Gov't Opp'n"), to which Connerton filed a reply, doc. no. 309 ("Def. Reply"). Connerton then filed updated medical records to supplement both compassionate release motions. Doc. No. 315.

For the reasons articulated below, I conclude that Connerton has not demonstrated extraordinary and compelling circumstances and a reduction in Connerton's sentence would not be supported by the factors set forth in section 3553(a). 18 U.S.C. § 3582(c)(1)(A). Accordingly, both motions, which are considered together, are **denied**.

I.  BACKGROUND

On September 17, 2018, following a three-week jury trial, Connerton was found guilty of thirty-four counts charged in the Superseding Indictment, including counts of wire fraud, securities fraud, money laundering, and tax evasion. *See* Jury Verdict, Doc. No. 201. The offense conduct to which Connerton was found guilty encompassed his activities as the organizer of a near-decade-long investment scheme. *See* Presentence Investigation Report ("PSR"), Doc. No. 267, at ¶ 6. From 2009 to 2017, Connerton falsely represented that his company, Safety Technologies LLC, had successfully developed a better version of a material that could be used to manufacture surgical gloves. *Id.* at ¶ 8. In the end, Connerton managed to defraud 70 investors out of at least $2.2 million, and the Internal Revenue Service out of at least $490,000. *See id.*; Gov. Opp'n, Doc. No. 308, at 3. Included among the victim-investors were women of a certain age and demographic that Connerton targeted through the dating site MATCH.com and convinced them, as well as their personal contacts, to invest in his company. *See* PSR, Doc. No. 267, at ¶ 13.

Connerton's Presentence Investigation Report calculated a Guidelines range of 97 to 121 months' incarceration. PSR, Doc. No. 267, at ¶ 85. The government sought a sentence within the Guidelines, and Connerton sought a substantial departure or variance. *See* Gov't Sentencing Mem., Doc. No. 254; Def. Sentencing Mem., Doc. No. 259. On December 19, 2019, after hearing arguments from the parties, I sentenced Connerton to 108 months' imprisonment. *See* Min. Entry, Doc. No. 266; Judgment, Doc. No. 272.

Connerton began serving his sentence on March 9, 2017, when he was arrested, and has served a little over half of his total sentence. First Mot., Doc. No. 304-1, at 2. His projected

release date is December 19, 2024. *Id.* Presently, he is incarcerated at the Federal Correctional Institution at Fort Dix ("FCI Fort Dix") in New Jersey.

## II.   LEGAL STANDARD

Federal law allows a court to grant a "compassionate release" motion to reduce a federal prisoner's sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). Previously only the Bureau of Prisons ("BOP") could file this kind of motion. Amidst widespread complaints about the failure of the BOP to file motions on prisoners' behalf, however, Congress amended the law with the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), to allow prisoners the right to file their own motions for a sentence reduction. *See United States v. Brooker*, 976 F.3d 228, 231 (2d Cir. 2020).

Section 3582(c)(1)(A) establishes several criteria for a court to consider when deciding whether to grant a motion for compassionate release. First, a court must consider whether the prisoner has satisfied the statute's mandatory exhaustion requirement. Second, a court must consider whether there are extraordinary and compelling reasons that might warrant a sentence reduction, such as a threat to a prisoner's health if he remains imprisoned. Third, notwithstanding any such extraordinary and compelling reasons, a court must consider whether in its discretion a sentence reduction is warranted in light of the purposes of sentencing under 18 U.S.C. § 3553.

## III.   DISCUSSION

### A.   Exhaustion

The parties do not dispute that Connerton exhausted his administrative remedies.

### B.   Extraordinary and Compelling Reasons for Release

Next, Connerton must demonstrate "extraordinary and compelling reasons" to justify his early release. 18 U.S.C. § 3852(c)(1)(A)(i). To do so, Connerton focuses on three issues: (1) his

incarceration has been much more punitive than anticipated due to the pandemic, (2) his medical conditions render him particularly vulnerable to COVID-19 and its variants; and (3) he requires a medical surgery for his prosthesis. Whether considered individually, or in concert, I do not find that those circumstances constitute extraordinary and compelling reasons warranting a sentence reduction.

First, Connerton focuses on his vulnerability to COVID-19. Given that Connerton has now been vaccinated, his age and purported underlying medical conditions—hypertension and aortic stenoisis, chronic exertion, and a BMI of 28-28.9—do not constitute an extraordinary and compelling reason warranting relief. Connerton is correct in that the COVID-19 situation is evolving, and "it is unclear how emerging COVID-19 variants will alter vaccine efficacy." *United States v. Hannigan*, 2021 WL 1599707, at *5 (E.D. Pa. Apr. 22, 2021). Nevertheless, the Center for Disease Control and Prevention indicates that vaccinated individuals, such as Connerton, have significant protection against serious illness or death as it stands now. *See United States v. Baeza-Vargas*, 532 F. Supp. 3d 840, 845–46 (D. Ariz. 2021) (collecting cases explaining that vaccination mitigates the risk from COVID-19 to such an extent that COVID-19, coupled with underlying medical conditions, does not present an extraordinary and compelling reason to grant compassionate release). And in Connerton's case, he already contracted COVID-19 and despite his risk factors, which predicted he could have a serious case of COVID-19, was not hospitalized.

Second, Connerton requests that he be released because his "prosthesis has completely failed him," and he requires surgery. Second Mot., Doc. No. 311, at 1. By way of background, Connerton slipped on maple syrup and fell in the prison dining hall several months ago. Def. Reply, Doc. No. 309, at 2. Because of the fall, Connerton sustained a humerous fracture,

resulting in the loss of mobility in his arm and numbness in his left hand. *Id.* at 4. Connerton maintains that he has received "[no] care" for those injuries, which renders his continued incarceration "inequitable." *Id.* at 14. Undoubtedly, the injuries Connerton sustained are serious. But to conclude that Connerton's health situation constitutes as extraordinary and compelling would be to ignore the medical records that Connerton, himself, submitted.

Included in those records is an April 2022 Report authored by Dr. Bills, an orthopedic surgeon. As reflected in the Report, Dr. Bills conducted a physical examination of Connerton. From that examination, Dr. Bills confirmed that Connerton requires surgery, but made clear that the need is "not emergent." Doc. No. 311-1, at 1. Shortly after Connerton's consultation with Dr. Bills, an administrative note was filed that set May 16, 2022 as the target date for Connerton's surgery. *Id.* The surgery has not occurred yet, but that is a product of Connerton's own doing. Per a June 2022 Report, Connerton has declined the surgery because he anticipates that his compassionate release motions will be granted, and he will therefore obtain the surgery after his release. *See* Doc. No. 315, at 1. Clearly, Connerton cannot decline medical treatment, and then, use the lack of medical treatment as a basis for release. Had Connerton claimed that the BOP was ill-equipped to provide the surgery, or that he was receiving sub-standard care, my analysis might look different. But Connerton, instead, continues to insist that he has received "[no] care," doc. no. 309, a claim that is plainly refuted by the medical records.[1] *See United States v.*

---

[1]  The recently filed medical records suggest that Connerton's other medical condition, aortic stenosis, has worsened. In a Report, dated June 7, 2022, Dr. Soffer, indicated that Connerton's aortic stenosis is "severe and symptomatic." *See* Doc. No. 315, at 1. The Report adds that Connerton's cardiac condition will likely not be addressed until he has the orthopedic surgery and suggests that Connerton be transferred to a "tertiary care medical center which has the facilities to address [both medical problems]." *Id.* at 1–2. Connerton has not raised his worsening cardiac condition as a basis for relief. Nonetheless, I consider whether it constitutes as extraordinary and compelling.
    The Report makes clear that Connerton's cardiac condition requires medical attention. Still, the Report does not suggest that the BOP cannot adequately provide Connerton with those services. In fact, the Report suggests that the BOP can provide both medical services to Connerton, albeit at a different facility. Accordingly, Connerton's

*Setiyaningsih*, 2022 WL 2160001, at *3 (10th Cir. June 15, 2022) (concluding that, the district court did not abuse its discretion in denying the defendant's motion for compassionate release where the defendant argued that the BOP failed to provide medical care but the "voluminous medical records" demonstrated otherwise). In short, the medical records establish both that Connerton's injuries *are* being monitored, and the BOP is equipped to provide Connerton with the medical surgery that he requires. Accordingly, Connerton's need for an orthopedic surgery does not present extraordinary and compelling circumstances.

Finally, Connerton's argument that his sentence has been more punitive than intended and thus justifies a sentence reduction is unpersuasive. Owing to the pandemic, every BOP inmate "has experienced limitations on their ability to communicate, exercise, gain an education, and receive job skills training." *United States v. Thomas*, 2021 WL 3924724, at *2 (D. Alaska Sept. 1, 2021). Still, conditions that are shared by nearly every inmate in the country are not extraordinary and compelling. This is not to say that conditions of confinement are irrelevant; but more is generally required to constitute as extraordinary and compelling. In the cases that Connerton cites, many decided before the vaccine rollout, extraordinary and compelling circumstances were based on a combination of unique factors, such as medical conditions that would have made a prisoner especially vulnerable to COVID-19, or family circumstances. For reasons already articulated, Connerton has not offered any other factor that could constitute as extraordinary and compelling.

    C.    <u>Section 3553(a) Factors</u>

---

worsened cardiac condition, while unfortunate, does not establish an extraordinary and compelling reason for release.

Even assuming arguendo that Connerton had presented extraordinary and compelling reasons for a sentence reduction, a finding I do not make here, the section 3553(a) sentencing factors weigh against reducing his sentence.

Bluntly, the sentencing factors weighing most heavily against release are the nature and circumstances of the offense and the history and characteristics of the defendant. What mattered to me at sentencing was the scope and gravity of Connerton's offense conduct. As I see it, nothing has changed since I sentenced Connerton. His crimes are as egregious as they were at sentencing. Such a serious crime deserves serious punishment, and the Guidelines prescribed a range of 97 to 121 months' incarceration. Connerton received a term of incarceration in the middle of that range. Further decreasing the sentence would go counter to the mandates that a sentence should constitute just punishment for the offense.

Connerton argues that he is less likely to recidivate given his age and criminal history. I disagree. It is true that Connerton is a first-time felony offender. Still, I cannot ignore that Connerton commenced these crimes in his late fifties, and his criminal conduct went on for years. Furthermore, Connerton has put forth no evidence that he has made attempts to rehabilitate himself. Nor has he accepted responsibility for his crimes. Connerton apologizes for his behavior, yet devotes several pages in the Reply as to why he is innocent of the charges of which he was found guilty. *See* Reply, Doc. No. 309, 6–12. Moreover, while incarcerated, Connerton sent a letter to Ms. Jean Marie Leahey, a representative from one of his companies, where he denied any wrongdoing. Letter, Doc. No. 308-1, at 2–3. In sum, I am simply not convinced that Connerton would cease his criminal conduct if he were released early.

Finally, Connerton posits that the factor focused on providing "a defendant with needed … medical care" supports his release. Second Mot., Doc. No. 311, at 1. But again, Connerton has not demonstrated that the BOP is unable to render those medical services to him.

## IV.     CONCLUSION

On balance, I conclude that Connerton has failed to demonstrate extraordinary and compelling reasons warranting the requested reduction of his term of imprisonment. Further, the section 3553(a) sentencing factors weigh against reducing his sentence. Thus, his motions for compassionate release, doc. nos. 304, 311 are **denied**.

It is so ordered.

Dated at Bridgeport, Connecticut this 11th day of August 2022.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge